**E-Filed 10/12/2010**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL SCOTT CASH, | Case Number 5:06-cv-07064-JF |
| Petitioner, | ORDER[1] DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| ROBERT AYERS, Acting Warden San Quentin State Prison, | |
| Respondent. | |

Petitioner Randall Scott Cash ("Cash") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the Court concludes that Cash is not entitled to relief and will deny the petition.

## I. BACKGROUND

On June 18, 1992, a jury convicted Cash of first degree murder (Cal. Code, § 187)[2] with a true finding for a special circumstance of murder in the course of robbery (§ 190.2, subd. (a)(17)(A)). Cash also was convicted of the attempted murder of Susan Balestri, the murder

---

[1] This disposition is not designated for publication in the official reports.

[2] All statutory citations are to the California Penal Code unless otherwise stated.

victim's girlfriend.  (§§ 664, 187).  The jury found that Cash personally used a firearm in both the murder and attempted murder (§ 12022.5).  It also found that the attempted murder was committed with a deadly and dangerous weapon (§12022, subd. (b)), resulting in great bodily injury (§12022.7).  The jury returned a verdict of death at the penalty phase.  (Superior Court of Alameda County, No. H-8485, Stanley P. Golde, Judge.)

Petitioner challenged his convictions on direct appeal and in a related habeas petition to the California Supreme Court.  On July 25, 2002 the Supreme Court affirmed Cash's convictions, but reversed the judgment of death.  *People v. Cash*, 28 Cal.4th 703 (2002).  Petitioner then filed a petition for writ of certiorari in the United States Supreme Court, which was denied on February 24, 2003.  The California Supreme Court denied Cash's subsequent habeas petition on October 29, 2003.  On November 17, 2005 Cash was sentenced to life without the possibility of parole after the district attorney announced that he no longer was seeking the death penalty.

Cash timely filed the instant federal habeas petition on November 14, 2006, asserting the following grounds for relief: (1) the prosecutor's peremptory challenge of a juror who was raised as a Jehovah's Witness constituted an equal protection violation under *Batson v. Kentucky*, 476 U.S. 79 (1986); (2) the trial court's exclusion of evidence showing the decedent's character for violence violated Cash's right to present a meaningful defense; (3) the trial court's limitation on the impeachment of Susan Balestri violated Cash's due process rights; (4) trial counsel was ineffective for failing to object to the trial judge's argumentative statements during the cross-examination of Balestri; (5) admission of evidence that Balestri was pregnant violated Cash's due process rights; (6) and (7) trial counsel was ineffective for failing to object to the trial judge's statements during the impeachment of a key prosecution witness and for failing to present evidence of Cash's brain damage; and (8) the trial court violated Cash's equal protection rights by failing to instruct on theft as a lesser-included offense of special circumstance murder predicated on robbery.

## II.  STANDARD OF REVIEW

A federal court may entertain a petition for writ of habeas corpus "on behalf of a person

2

in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320 (1997). This petition was filed after the effective date of AEDPA and is therefore subject to its provisions.

AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. *Williams v. Taylor*, 529 U.S. 362, 402-13 (2000). Under AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76 (citations omitted). "Rather, that application must be objectively unreasonable." *Id.* (citations omitted).

While habeas corpus relief is an important instrument to ensure that individuals are constitutionally protected, *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) holds that direct review of a criminal conviction is the primary method for a defendant to challenge that conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765 (1995).

### III.  DISCUSSION

**A.      *Batson* Challenge (Claim One)**

3

The Supreme Court has established a three-part test to determine if a prosecutor has discriminated in excluding prospective jurors. *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986). First, the defendant must make a prima facie showing that the challenge was based on race. *Id.* Second, the prosecutor must offer a race-neutral basis for the challenge. *Id.* Third, the court must determine whether the defendant has shown "purposeful discrimination." *Id.* Under the AEDPA standard of review, a federal habeas court may grant relief only if a state court's factual findings on a *Batson* motion were unreasonable; otherwise the findings must be presumed to be correct. *Rice v. Collins*, 546 U.S. 333, 338-39 (2006). The petitioner has the burden of rebutting the presumption by "clear and convincing evidence." *Id.*

Here, Petitioner maintains that the California Supreme Court erred in affirming the denial of his *Batson* challenge.[3] During voir dire, the prosecutor exercised peremptory strikes of six of seven African-Americans. Cash brought a *Batson* challenge, claiming that this demonstrated a pattern of racial discrimination in jury selection. RT 1250-57. Although the trial court made no express finding that Cash had made a prima facie showing that the strikes were based on race, it asked the prosecutor to assert a legitimate non-discriminatory explanation for excusing the jurors. RT 1257. In the end, the court found no systematic exclusion based on race. RT 1273.

Cash appealed the trial court's ruling as to the removal of the seventh African-American prospective juror, Mr. Spears, claiming that the prosecutor's reasons for removing him were merely a pretext for discrimination. At trial, the prosecutor stated that she had excused Spears for two reasons: (1) he indicated that he was raised as a Jehovah's Witness and, in her experience, individuals with that religious background were reluctant to vote for death; and (2) his answers during voir dire were "arrogant" and "smart -aleckey," demonstrating a potential hostility to the proceedings. RT 1263-64. On appeal, the state appellate court concluded that these reasons "[found] support in the record" and were "not inherently implausible." *People v.*

---

[3] In 1978 California adopted its own test to address the exclusion of jurors based on race, religion, ethnicity, or similar grounds. *People v. Wheeler*, 22 Cal.3d 258, 276-77 (1978). Cash brought his challenge in the trial pursuant to both *Batson* and *Wheeler*. However, this order applies only the federal *Batson* standard and will refer to Cash's objection at trial as a *Batson* challenge.

4

*Cash*, 28 Cal.4th 703, 726 (2002).

The only issue for review by this Court is whether the state courts were correct in concluding that the prosecutor's explanation was sincere rather than pretextual. Because determinations of credibility are made best by the trial court, there is no basis for reversal of the ruling unless the prosecutor's explanation was "completely outlandish" or there was "other evidence which demonstrates its falsity." *U.S. v. Stafford,* 136 F.3d 1109, 1114 (7th Cir. 1998).

While Spears indicated that he was no longer a Jehovah's Witness,[4] it certainly was not "completely outlandish" for the prosecutor to express skepticism about Spears' ability to impose the death penalty in light of his religious upbringing. Both federal and state courts have held that it is not discriminatory to remove a juror whose religious beliefs would hinder him from convicting a criminal defendant or imposing the death penalty. *See U.S. v. DeJesus*, 347 F.3d 500, 510-11 (3d Cir. 2003); *Stafford*, 136 F.3d at 1114; *Miller v. Sullivan*, No. 08-cv-1675-JLS, 2010 WL 3339304, at *12 (S.D. Cal. Feb. 23, 2010); *People v. Catlin*, 26 Cal.4th 81, 118-19 (2001); *People v. Ervin*, 22 Cal.4th 48, 76 (2000).[5]

Nor was Spears' religious background the only reason for his exclusion. As the prosecutor indicated, Spears appeared anxious and hostile during questioning. RT 1263-64. While this Court cannot infer demeanor and tone from the record, it is reasonably clear that Spears' answers during voir dire were curt.[6] Under AEDPA, this Court must give considerable deference to the trial court's firsthand observation of Spears. That observation led to the conclusion that "there was a valid reason for the prosecutor to exercise a peremptory challenge." RT 1273. Petitioner simply has not offered clear and convincing evidence that the acceptance of the prosecutor's explanation was objectively unreasonable, as is required by *Rice v. Collins*, 546

---

[4] During voir dire Mr. Spears indicated that he knew another prospective juror. When asked about their relationship he stated, "I was raised in Jehovah's Witnesses, and she's a Jehovah Witness, and I no longer." RT 466.

[5] The United States Supreme Court has yet to address this issue directly.

[6] When asked to clarify an answer to his questionnaire Spears stated, "I feel that it's fairly clear I would think." RT 465. And, when asked to confirm his willingness to vote for death he replied, "I said yes." *Id.*

U.S. at 338-39.

**B. Evidentiary Rulings**

In a federal habeas proceeding, a conviction may be set aside if it is found that state court rulings on the admissibility of evidence violated the petitioner's basic constitutional rights. *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

**1. Claim Two**

Cash contends that his right to present a meaningful defense was compromised by the trial court's refusal to permit evidence of the murder victim's violent past. At trial, Cash attempted to present evidence that the murder victim, Bud Smith, used physical violence to enforce the repayment of debts and threatened violence toward Cash if Cash failed to pay rent. Although the trial court allowed testimony that Smith had used force in Cash's presence to evict a former tenant, it did not allow Cash to inquire about Smith's general debt collection methods. RT 1438-39. Nor did it allow hearsay testimony that Smith had threatened to harm Cash if Cash failed to repay his debt. RT 1644.

Cash argues that this additional evidence should have been admitted in order to show that the killing was retaliatory in nature, which would have reduced it to second degree murder and would have supported his defense that robbery was not the objective. However, as the California Supreme Court observed, "Smith's customary debt collection practices were not relevant to show defendant's state of mind at the time he killed Smith unless defendant knew of those practices." *Cash*, 28 Cal.4th at 726. Cash did not present any such evidence. Likewise, Cash did not show that he knew Smith was discussing threats of violence against him with other people.

The trial court's ruling was consistent with California's rules of evidence regarding the relevance of a victim's character for violence and it did not limit Cash's ability to present a meaningful defense. Pursuant to Cal. Evid. Code § 352, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." By the time he sought to admit testimony about Smith's tendency for violence, Cash already had shown that he witnessed

6

Smith's participation in a forceful eviction. Further evidence on that topic would have been redundant. Moreover, as the state appellate court pointed out, Cash still was permitted to document his increasing anxiety about the debt repayment and to characterize the killing as an act of rage. *Cash*, 28 Cal.4th at 727.

**2. Claim Three**

Petitioner's third claim is twofold: he argues that (1) the California Supreme Court incorrectly affirmed the trial court's decision to limit the impeachment of Susan Balestri; and (2) the trial judge's comments about the precluded evidence in front of the jury violated his due process rights. He relies on *Olden v. Kentucky*, 488 U.S. 227, 233 (1988) in which the Supreme Court held that the failure to permit reasonable cross-examination violates a defendant's right to confrontation. He cites two additional cases for the proposition that in a fair trial the jury must consider only relevant and competent evidence bearing on the defendant's guilt or innocence. *Bruton v. United States*, 391 U.S. 123, 131 n. 6 (1968); *People v. Valentine*, 42 Cal.3d 170, 177 (1986). The state courts' determinations were not contrary to these precedents.

On cross-examination, Cash attempted to expose an alleged inconsistency as to whether Balestri saw him take money from a clipboard under Smith's nightstand. RT 1462. During direct examination, Balestri testified that she saw Cash remove money from the clipboard. RT 1382. Cash claimed that this was contrary to the testimony Balestri gave at her preliminary hearing, where she was asked, "Now you didn't actually see . . . Randy take the money, did you?" and she replied, "No, I didn't actually see him." CT 242.

The trial court did not allow Cash to admit this testimony as a prior inconsistent statement under Cal. Evid. Code § 1235. RT 1462-64. In the court's view, Balestri's answer on direct examination was not inconsistent with her previous statement, as she was asked two distinct questions. *Id.* At the preliminary hearing, she was asked if she saw Cash take the money. *Id.* On direct examination she was asked if she saw him in possession of the money. *Id.*

However, the transcript does not reasonably support a determination that the question asked at trial was, in fact, different from the one posed at the preliminary hearing. When taken at face value, there appears to be a direct contradiction.

7

Despite this ruling, Cash took advantage of several opportunities to uncover contradictions on other points in Balestri's testimony including discrepancies as to the sequence of events and the amount of money found on the clipboard. RT 1450-54, RT 1420. The trial court's decision to limit the impeachment of Balestri did not prevent Cash from effectively cross-examining her. Consequently, the trial court's determination was harmless error.

Finally, as the California Supreme Court noted, the trial judge did not engage in misconduct by suggesting that defense counsel's question was improper and by declaring that there was no inconsistency in Balestri's statements. *Cash,* 28 Cal.4th at 728. "California's Constitution expressly provides that a judge may comment on the evidence." *Smith v. Curry*, 580 F.3d 1071, 1079 (9th Cir. 2009).[7]

The comments made by the trial judge did not amount to advocacy for the prosecution and did not deny Cash a fair trial. Taken as a whole, Balestri's testimony described a sequential murder and robbery, and "there is not a reasonable probability that the trial court's ruling affected the jury's decision that petitioner had formed the intent to rob before or at the time he shot Smith." *Cash,* 28 Cal.4th at 728.

**3. Claim Five**

Cash next argues that he was denied due process when the trial court improperly admitted evidence of Balestri's pregnancy. Cash is correct that this evidence was more prejudicial than probative. However, the California Supreme Court appropriately concluded that its admission was harmless error under the standards set forth in *People v. Watson*, 46 Cal.2d 818, 836 (1956)[8] and *Chapman v. California*, 386 U.S. 18, 23 (1967)[9]. *Cash*, 28 Cal.4th at 729.

---

[7] "The court may make any comment on the evidence and testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause." Cal. Const. art. VI, § 10.

[8] "[A] 'miscarriage of justice' . . . [occurs when] it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." *Watson*, 46 Cal.2d at 836.

[9] "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" (citations omitted). *Chapman*, 386 U.S. at 23.

Given the evidence presented at trial, the jury likely would have found Cash guilty of first degree murder with a special circumstance even without knowledge of Balestri's pregnancy. According to the jury instructions, first degree murder is defined as the unlawful killing of a human being in the course of a robbery. RT 1767. The special circumstance predicated on robbery requires a finding that the murder was committed in order to advance the commission of a robbery or to facilitate the escape from a robbery or to avoid detection. RT 1778. The evidence showed that the night before the murder, Cash asked a friend if he knew a coke dealer to "knock off" for money to buy drugs. RT 1343. There also was evidence that when Balestri asked why Cash was assaulting her he said, "Because I have to." RT 1371. These statements imply a premeditated robbery and an attempt to avoid detection by killing the eyewitnesses. Thus, the California Supreme Court's determination that the testimony concerning Balestri's pregnancy did not contribute to the conviction was not unreasonable.

**C. Ineffective Assistance of Counsel**

To succeed on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must show that there is a reasonable probability that he was prejudiced by counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" *Id.*

**1. Claim Four**

Petitioner claims that his trial counsel rendered ineffective assistance by failing to object to the trial judge's argumentative assertions during the attempted impeachment of Balestri. However, as noted above, the trial judge was well within his rights under California law, and there was no prejudice.

**2. Claim Six**

Likewise, Cash was not prejudiced by counsel's failure to object to the trial judge's commentary during the cross-examination of Todd Babbitt. Cash contends that his counsel should have objected when the trial judge undercut defense efforts to impeach Babbitt's credibility by trivializing Babbitt's motivation for testifying.

In his opening statement, defense counsel highlighted the fact that Babbitt had received

consideration for his testimony in the form of lenient prosecution on a pending drunk driving offense. RT 1305-06. The prosecutor sought to discredit this theory on direct examination by exposing the offense and indicating that there was a bench warrant outstanding because Babbit had failed to pay his fine. RT 1318-20. The trial judge then weighed in, stating "You're going to make a misdemeanor a federal offense if you don't take care of it. . . . You don't pay, you go to jail." RT 1319-20. Cash claims that this amounted to "mock judicial severity" that undermined the seriousness of the attempted impeachment, and that the error requires reversal because Babbitt's testimony was key to the issue of premeditation.

The California Supreme Court reasonably determined that the comments were an innocuous restatement of the law and that Cash was not prejudiced by his counsel's failure to object to them at trial. *Cash*, 28 Cal.4th at 730. Moreover, the court appropriately noted that any harm resulting from the trial judge's comments could have been cured by an admonition. *Id.* Because Cash failed to request a curative admonition at trial, he has defaulted that particular claim of error under California's contemporaneous objection rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (holding that federal habeas review of a claim is barred in all cases where a state prisoner has defaulted his federal claim in state court pursuant to an adequate and independent state procedural rule).

**3. Claim Seven**

Cash asserts that his trial counsel's failure to discover and present evidence regarding Cash's organic brain damage amounted to ineffective assistance at the guilt phase of the trial. Although the California Supreme Court denied this claim without explanation, denial was appropriate.

During the penalty phase, two psychiatrists–Dr. Modlin and Dr. Vicary–testified on Cash's behalf. Both testified that Cash suffered from severe depression, yet neither indicated that this prevented him from forming criminal intent.[10]

---

[10] Dr. Modlin specifically indicated that he did not find any serious mental illness. RT 2367. Dr. Vicary echoed this when he stated that he and Dr. Modlin were both "saying a serious depression, not the kind that you would [have], say, if you went to the county hospital on the

10

1    Dr. Modlin had examined Cash in 1977 in connection with a previous crime. Defense
2 counsel was aware of Dr. Modlin's findings, yet chose not to call him as a witness during the
3 guilt phase. "In general, an attorney is entitled to rely on the opinions of mental health experts in
4 deciding whether to pursue an insanity or diminished capacity defense." *Hendricks v. Calderon*,
5 70 F.3d 1032, 1038 (9th Cir. 1995). In light of this standard and the benign diagnoses presented
6 at the penalty phase, trial counsel's decision was reasonable.

**D. Jury Instructions (Claim Eight)**

For a habeas petitioner to obtain relief from a federal court based on erroneous jury instructions, "it must be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some [constitutional right]." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). "The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citations omitted). Essentially, "the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process." *Johnson v. Runnels*, C 02-5537, 2006 WL 823060, at * 16 (N.D. Cal. Mar. 29, 2006).

In his eighth claim for relief, Cash contends that the trial court violated his right to equal protection when it failed to instruct the jury that simple theft, which is a lesser-included offense of robbery, also is a lesser-included offense of special circumstance murder predicated on robbery. He argues that in this respect a person charged with special circumstance murder in the commission of a robbery is similarly situated with a person charged with robbery alone. He reasons that because the person charged with robbery would be eligible for a jury instruction on theft, he too was entitled to a lesser-included offense instruction on theft–especially because a finding of theft would result in his acquittal of special circumstance murder, which is a death-eligible offense.

As the California Supreme Court determined, Cash is not similarly situated to his hypothetical defendant, because "he could not be punished for robbery or for the lesser included

---

psychiatric unit." RT 2501.

11

1  offense of theft even if the jury had made a 'not true' finding as to the robbery-murder special
2  circumstance." *Cash*, 28 Cal.4th at 738.  This conclusion is supported by federal law.  Cash
3  relies on *People v. Turner*, 50 Cal.3d 668, 690 (1990) for the proposition that the failure to
4  instruct on theft amounts to error in a case involving a charge of special circumstance murder
5  predicated on robbery.  However, on federal habeas review in the same case, the Ninth Circuit
6  found no error.  *Turner v. Calderon*, 281 F.3d 851, 886 (9th Cir. 2002).  Relying on *Beck v.*
7  *Alabama*, 447 U.S. 625 (1980) and its progeny, the court held that justice only requires "the jury
8  not be faced with an all-or-nothing, capital conviction-or-acquittal choice." *Turner*, 281 F.3d at
9  884.  No error exists where the judge provides alternative instructions for a finding of guilt of a
10 non-capital offense.  *Id.* at 886.   Here, the trial court did exactly that.  The jury was instructed
11 that Cash could be acquitted or convicted on any or all of the following offenses: murder, murder
12 with a special circumstance, and attempted murder.  RT 1786.  As such, the court did not violate
13 Cash's right to equal protection, and there was no error.

## IV. ORDER

Accordingly, the petition for writ of habeas corpus is DENIED.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: 10/12/2010

_____
JEREMY FOGEL
United States District Judge

Case No. 5:06-cv-07064-JF
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
(JFLC1)