1

2                                                          **E-Filed 1/21/2011**

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                            SAN JOSE DIVISION

12

13   RANDALL SCOTT CASH,                    | Case Number 5:06-07064-JF

                         Petitioner,        | ORDER[1] GRANTING IN PART AND
14                                          | DENYING IN PART MOTION TO
         v.                                 | ALTER OR AMEND JUDGMENT
15
                                            | [Re: Docket No. 57]
16   MIKE McDONALD, Acting Warden San Quentin
     State Prison,

17                       Respondent.

18

19

20

21          Pursuant to Fed. R. Civ. P. 59(e) Petitioner Randall Scott Cash ("Cash") moves to amend

22   this Court's Judgment entered on October 12, 2010, denying his petition for a writ of habeas

23   corpus.  For the reasons set forth below, the motion will be granted in part and denied in part.

24                                  **I. BACKGROUND**

25          On June 18, 1992, a jury convicted Cash of first degree murder (Cal. Code, § 187)[2] with a

26   _____

27          [1] This disposition is not designated for publication in the official reports.

28          [2] All statutory citations are to the California Penal Code unless otherwise stated.

1   finding of special circumstance for murder in the course of robbery (§ 190.2, subd. (a)(17)(A)).

2   Cash also was convicted of the attempted murder of Susan Balestri, the murder victim's

3   girlfriend.  (§§ 664, 187).  The jury found that Cash personally used a firearm in both the murder

4   and the attempted murder (§ 12022.5).  It also found that the attempted murder was committed

5   with a deadly and dangerous weapon (§12022, subd. (b)), resulting in great bodily injury

6   (§12022.7).  The jury returned a verdict of death at the penalty phase.  (Superior Court of

7   Alameda County, No. H-8485, Stanley P. Golde, Judge.)

8          Cash challenged his convictions on direct appeal and in a related habeas petition to the

9   California Supreme Court.  On July 25, 2002 that court affirmed the convictions but reversed the

10   sentence of death.  *People v. Cash*, 28 Cal.4th 703 (2002).  Cash then sought a writ of certiorari

11   in the United States Supreme Court, which was denied on February 24, 2003.  The California

12   Supreme Court denied Cash's subsequent habeas petition on October 29, 2003.  On November

13   17, 2005, after the district attorney announced that he no longer was seeking the death penalty,

14   Cash was sentenced to life in prison without the possibility of parole.

15          Cash filed the instant federal habeas petition on November 14, 2006, asserting the

16   following grounds for relief: (1) the prosecutor's peremptory challenge of a juror who was raised

17   as a Jehovah's Witness violated Cash's right to equal protection pursuant to *Batson v. Kentucky*,

18   476 U.S. 79 (1986); (2) the trial court's exclusion of evidence of the decedent's character for

19   violence violated Cash's right to present a meaningful defense; (3) the trial court's limitation on

20   the impeachment of Susan Balestri violated Cash's right to due process; (4) trial counsel was

21   ineffective in failing to object to the trial judge's argumentative statements during the cross-

22   examination of Balestri; (5) admission of evidence that Balestri was pregnant violated Cash's

23   right to due process; (6) and (7) trial counsel was ineffective in failing to object to the trial

24   judge's statements during the impeachment of a key prosecution witness and for failing to

25   present evidence of Cash's organic brain damage; and (8) the trial court violated Cash's right to

26   equal protection by failing to instruct on theft as a lesser-included offense of special

27   circumstance murder predicated on robbery.

28          In the instant motion, Cash asserts that this Court's judgment is clearly erroneous because

2

the Court: (1) mischaracterized Cash's *Batson* challenge by defining the claim as one focused on the pretextual nature of the prosecutor's explanation when in fact the claim alleged that the religious reason proffered by the prosecutor was discriminatory on its face; (2) found harmless error in the trial court's limitation on the impeachment of Susan Balestri and the admission of evidence that Balestri was pregnant at the time of the assault; (3) found no judicial misconduct in the trial court's comment on the attempted impeachment of Balestri and no ineffective assistance based on counsel's failure to object to the trial judge's statements; (4) improperly concluded that Cash's claim for ineffective assistance of counsel was procedurally defaulted with respect to counsel's failure to object to the trial judge's comments during the impeachment of Todd Babbitt; (5) found no ineffective assistance in counsel's failure to develop evidence of Cash's organic brain damage; and (6) mischaracterized Cash's equal protection claim based upon the jury instructions given at trial for special circumstance murder predicated on robbery.

Respondent opposes the instant motion and has filed a written response.[3]  Pursuant to Civil L. R. 7-1(b), the Court finds that the motion is suitable for determination without oral argument.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) provides that "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."  Modification of a judgment is appropriate if: (1) the district court is presented with newly discovered evidence; (2) the district court committed clear error or the initial decision was manifestly unjust; or (3) there is an intervening change in controlling law. *McQuillion v. Duncan*, 342 F.3d 1012, 1014 (9th Cir. 2003).  The repetition of arguments that the district court already has considered and rejected is not a proper basis for reconsideration. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991); *Durand v. U.S. Customs*, No. 05-55472, 2006 WL 92795, at *2 (9th Cir. Jan. 17, 2006).  The decision whether to grant reconsideration is committed to the sound discretion of the district court and will be reviewed only for abuse of discretion. *McQuillion*, 342 F.3d at 1014.

---

[3] Response to Motion to Amend Judgment filed November 18, 2010. Dkt. 63.

3

1                                                 **III. DISCUSSION**

2 **A.  Claim One (*Batson* Challenge)**

3         Cash argues that the Court incorrectly imputed to him "the specific claim 'that the

4 prosecutor's reasons for removing [the juror] were merely a pretext for discrimination.'" Motion

5 to Amend at 2 (quoting Order at 4).  According to Cash, his claim was based on the theory that

6 the religious reason proffered by the prosecutor was *facially* invalid and that any neutral reasons

7 given by the prosecutor were a diversion from the discriminatory challenge.  Motion to Amend

8 at 2; Reply Brief at 3-4.

9         Accepting this clarification, the Court reaches the same conclusion that it did previously.

10 At trial, the prosecutor stated that she had removed the juror for two reasons:

11       First of all, on the transcript he indicated that he was raised a Jehovah's witness. .
. . And it's been my experience as a prosecutor, and from talking to Jehovah

12       witnesses who have come to the box, that they do not like–they are taught not to
pass judgment, and do not want to convict.  And I did not want to risk something

13       in his background, his religious background might come out when the crucial
question was asked of him could he vote for death. . . . Also . . . I thought he was

14       being a little smart alecky with regard to me when I asked him if he could vote for
death.  He said, "I said yes."  So he did not seem like a person to me who would

15       get along with the rest of the jurors, and he didn't seem like he really wanted to be
here at all on jury duty. . . . [H]e was sitting at the edge of his seat on the day of

16       selection . . . holding his backpack ready to get out of there as soon as he was
excused, and, in fact, when he was excused he just bolted out of there.

17

18 RT 1262-63.

19 The fact that the prosecutor's decision to use a peremptory strike was motivated in part by a

20 concern that the juror's religious background would make him reluctant to pass judgment or vote

21 for death is not discriminatory on its face.  As explained in this Court's original order, both

22 federal and state courts have recognized that it is not discriminatory to remove a juror whose

23 religious beliefs would prevent him from applying the law.  *See U.S. v. DeJesus*, 347 F.3d 500,

24 510-11 (3d Cir. 2003) ("Even assuming that the exercise of a peremptory strike on the basis of

25 religious affiliation is unconstitutional, the exercise of a strike based on religious beliefs is

26 not."); *U.S. v. Stafford*, 136 F.3d 1109, 1114 (7th Cir. 1998) ("It would be proper to strike [a

27 juror] on the basis of a belief that would prevent him from basing his decision on the evidence

28 and instructions, even if the belief had a religious backing."); *Miller v. Sullivan*, No. 08-cv-1675-

4

1  JLS, 2010 WL 3339304, at *12 (S.D. Cal. Feb. 23, 2010) ("Concern about religious beliefs

2  affecting a juror's ability to judge is a race-neutral explanation."); *People v. Catlin*, 26 Cal.4th

3  81, 118-19 (2001) ("References to religion did not reflect bias against a particular religion or

4  against religion in general, but rather a concern that the prospective jurors' religious beliefs

5  would make them reluctant to impose the death penalty. This concern was a permissible ground

6  for the exercise of a peremptory challenge."); *People v. Ervin*, 22 Cal.4th 48, 76 (2000) ("the

7  prosecutor . . . excused [the jurors] because he perceived they had a 'religious bent' or bias that

8  would make it difficult for them to impose the death penalty, a proper, nondiscriminatory ground

9  for making a peremptory challenge."). Furthermore, "neither the Supreme Court nor the Ninth

10 Circuit has extended the reach of *Batson* to peremptory challenges based on religion" *U.S. v.*

11 *Jordan*, Nos. 05-50907, 06-50028, 2006 WL 3613214, at *1 n. 1. (9th Cir. Dec. 7, 2006).[4]

12        Here, Cash contends that the juror was challenged not because of his beliefs at the time

13 of trial, but because of his "natal association with Jehovah's Witnesses." Motion to Amend at 3.

14 However, as Respondent points out, the prosecutor referred expressly to the juror's "religious

15 background" and suggested that the juror's prior religious experience might affect his outlook on

16 justice and mercy. Opposition Brief at 3 (quoting RT 1263). Cash argues that creating a

17 distinction between one's background and natal associations is "merely glib,"[5] but in fact the two

18 concepts are distinct. An individual may be born into a religion without being raised in its

19 traditions. Here, however, the juror indicated that he was "raised in Jehovah's Witnesses." RT

20 466. The stated basis for the peremptory challenge was that upbringing, not an accident of the

21 juror's birth.

22        Cash contends that even if the peremptory challenge was based on the juror's religious

23 background, no inquiry was made into the juror's beliefs at the time of trial, when the juror no

24 longer was a Jehovah's Witness. Motion to Amend at 3-4. Cash is correct that the prosecutor

26        [4] *See Davis v. Minnesota*, 511 U.S. 1115 (1994) (denying certiorari to appeal from

27 Minnesota Supreme Court decision declining to extend *Batson* to religion).

28        [5] Reply Brief at 2.

Case No. 5:06-cv-07064-JF
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER OR AMEND JUDGMENT
(JFLC1)

1    did not inquire whether the juror ever had adhered to the beliefs held by Jehovah's Witnesses or

2    he currently adhered to such beliefs.  However, while such an inquiry may have been useful, it

3    was not required.  *See People v. Crespin*, Nos. E034759, E035863, 2005 WL 3106410, at *13

4    (Cal. App. 4 Nov. 21, 2005), *aff'd*, No. 08-55556, 2010 WL 707387 (9th Cir. Mar. 1, 2010)

5    (holding that while the prosecutor's failure to ask questions "probably would have *permitted* the

6    trial court to reject [the proffered] reason, it did not *require* it to do so.").  Both the Supreme

7    Court and the Ninth Circuit have reached the same conclusion.  Both *Miller-El v. Dretke*, 545

8    U.S. 2312 (2005) and *Lewis v. Lewis*, 321 F.3d 824 (9th Cir. 2003) hold that a prosecutor's

9    failure to ask questions related to his or her stated concerns about a juror *can* support a finding

10   that those concerns are pretextual.  However, both of these cases involved significant evidence of

11   discriminatory intent.  In *Miller-El* there was a clear imbalance in the questioning of black and

12   non-black jurors.  545 U.S. at 244-45.  In *Lewis*, the prosecutor's failure to ask follow-up

13   questions was only one of several reasons upon which the Court rejected the prosecutor's

14   explanation as pretext. 321 F.3d at 832-33.  Among these reasons was the fact that the trial court

15   found two or more of the prosecutor's other stated reasons to be pretextual, "undermining his

16   credibility."  *Id.*  No such issues were present here.  It was not unreasonable for the trial court to

17   conclude that the prosecutor genuinely was concerned about the juror's religious bias.

18         Although the juror expressed a willingness to impose a death sentence, his ability to vote

19   for death was far from certain.   His reply to the prosecutor's inquiry on this point was curt and

20   reasonably could be perceived as indicating a desire to avoid further questioning rather than to

21   express a sincerely held belief.   As the Supreme Court has stated, "[e]xperience has proved

22   [that] . . . veniremen may not know how they will react when faced with imposing the death

23   sentence, or may be unable to articulate, or may wish to hide their true feelings." *Wainwright v.

24   Witt*, 469 U.S. 412, 424-25 (1985).  The fact that the juror summarily answered in the affirmative

25   when asked if he could vote for death does not override legitimate concerns expressed by the

26   prosecutor or the trial court's acceptance of those concerns.

27         *Batson* requires trial courts to determine if purposeful discrimination exists in light of the

28   reasons adduced by the prosecutor.  "[T]he prosecutor's explanation need not rise to the level

6

justifying exercise of a challenge for cause." 476 U.S. 79 at 97.  To make its determination, a court must consider the "totality of the relevant facts."  *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006) (en banc), (quoting *Hernandez v. New York*, 500 U.S. 352, 363, 365 (1991)). Cash argues that the trial court erred by analyzing only the first reason given by the prosecutor. However, the record indicates that the trial court asked the prosecutor to explain her reasons for striking six of seven African-American jurors, and the court considered those reasons as a whole, looking to the totality of relevant facts in concluding that "this was not a systematic exclusion based upon race . . . there was a valid reason for the prosecutor to exercise a peremptory challenge on *each* case."  RT 1273 (emphasis added).  Based upon the record, the trial court did not err by failing to provide explicit analysis of the prosecutor's second reason for removing the juror in question here.

It also is arguable that Cash has mischaracterized the nature of the *Batson* claim he brought in the trial court.  During the colloquy with the trial judge regarding the *Batson* challenge, defense counsel suggested that the prosecutor was using religion as a pretext for dismissing the juror because of his race, stating:

> The prosecution's justification I think is [sic] little difficult to believe.  If she had been concerned about his being raised as a Jehovah's witness and that having some affect on his ability to judge people, she could have asked him questions about that. . . . With respect to him looking like he was . . . ready to leave . . . I suppose at that point he probably was getting the message . . . that he was going to be excused because he was black.

RT 1265.

At least one circuit has held that a religion-based *Batson* claim may be forfeited where the defendant raised only a race-based *Batson* challenge at trial.  *U.S. v. Brown*, 352 F.3d 654, 662 (2d Cir. 2003) ("Defendant's attempts to make her race-based challenge encompass her religion-based claim do not avail.").  Thus, there is some question as to whether Cash has even made out a cognizable *Batson* claim.

**B. Claim Six (Ineffective Assistance of Counsel)**

Cash claims that his trial counsel was ineffective in failing to object to the trial judge's comments during the impeachment of Todd Babbitt.  In denying relief on this claim, the Court explained that the claim was procedurally defaulted because Cash failed to request a curative admonition at trial.  Cash correctly points out that the failure to request a curative admonition

7

1   affects only the ability to raise this type of claim on appeal.  Motion to Amend at 6.  However,

2   while it acknowledges its error with respect to the procedural point, the Court affirms its

3   previous order, concluding that relief is not warranted because Cash was not prejudiced by

4   counsel's failure to object.

5   **C. Claim Seven (Ineffective Assistance of Counsel)**

6          Cash also contends that his trial counsel was ineffective in failing to marshal evidence of

7   Cash's organic brain damage, because in a capital case "[t]rial counsel [is] not free to eschew

8   investigation of any mental impairments for which there was substantial indication." Motion to

9   Amend at 7.   This argument was made and considered previously.  Moreover, to the extent that

10  counsel's failure to investigate amounted to deficient representation, Cash suffered no prejudice,

11  as his death sentence was overturned on appeal.

12  **D. Claim Eight (Jury Instructions)**

13         Cash next asserts that this Court mischaracterized his equal protection claim with respect

14  to the jury instructions given for the charge of special circumstance murder.  Motion to Amend

15  at 8.  The Court understood the claim as alleging discrimination between "a person charged with

16  special circumstance murder in the commission of a robbery" and "a person charged with

17  robbery alone." *Id.* (quoting Order at 11).  Cash has clarified that his claim is based on the

18  difference in the instructions given in murder cases in which the defendant is charged with

19  robbery special circumstance alone, and those in which the defendant also is charged

20  substantively with robbery.

21         Cash argues that it is a denial of equal protection to include an instruction on the lesser-

22  included offense of theft only for the latter group of defendants.  However, a lesser-included

23  instruction for defendants charged with robbery special circumstance murder is unnecessary.  As

24  Cash himself acknowledges, the purpose of providing an instruction on lesser-included offenses

25  is to allow jurors to determine the defendant's level of culpability.  Motion to Amend at 9.

26  Although jurors are not asked specifically to make the distinction between robbery and theft

27  when deliberating on a finding of robbery special circumstance, they still are asked to make an

28  assessment of culpability.  A defendant may not be found guilty of a robbery special

8

Case No. 5:06-cv-07064-JF
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER OR AMEND JUDGMENT
(JFLC1)

circumstance without finding the necessary *mens rea* for robbery.  As the trial judge properly

instructed the jury,

> [I]n the crime of robbery, there must exist in the mind of the robber at the time the
> force is applied the specific intent to commit such crime . . . Unless such intent so
> exists, the crime is not committed. . . . To find a special circumstance of murder in
> the commission of the robbery be true . . . you need three elements: Number one,
> that the murder was committed while the defendant was engaged in the
> commission of or attempt to commit the crime of robbery as I have heretofore
> defined it.

RT 1768-69, 1778.

If the jury does not find the *mens rea* necessary for robbery, it cannot find the special

circumstance to be true.  The existence or non-existence of a lesser-included offense is

immaterial to this determination.

**E. Claims Three, Four, and Five (Evidentiary Rulings)**

Cash's remaining arguments were considered fully by the Court in its original order and

will not be addressed here.

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to alter or

amend judgment is GRANTED IN PART and DENIED IN PART.  The Judgment dated October

12, 2010 is hereby modified consistent with the foregoing discussion.

DATED: January 21, 2011

_____
JEREMY FOGEL
United States District Judge

Case No. 5:06-cv-07064-JF
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER OR AMEND JUDGMENT
(JFLC1)